**Herma BARNES, Plaintiff,**

v.

**LERNER SHOPS OF TEXAS, INC., Defendant.**

Civ. A. No. 68–H–735.

United States District Court,
S. D. Texas,
Houston Division.

March 8, 1971.

James R. Watson, Jr., Dixie, Wolf & Hall, Houston, Tex., for plaintiff.

James M. Neel, Richard R. Brann, Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM OPINION

BUE, District Judge.

This case was tried to the Court. Plaintiff, a Negro, instigated this action for reinstatement, back pay, and injunctive relief pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 3(a), 5(e)–(g). The amended complaint alleges that defendant, Lerner Shops of Texas: (1) discharged the plaintiff solely because of her race and because she opposed defendant's unlawful employment practices; (2) discriminated against her during her employment with respect to the conditions of employment; and (3) discriminated against all of defendant's Negro employees with respect to their compensation, terms and conditions of employment, and opportunities for promotions.

Defendant contends that plaintiff was discharged for reasons other than her race and that it has not otherwise discriminated against its Negro employees.

Lerner Shops of Texas, Inc., is a subsidiary of Lerner, Inc., which has its main offices in New York City and operates retail stores throughout the United States. In the Houston area defendant had four stores in operation at all times material to this lawsuit. Each store's managerial staff included a store manager, two or three sales department managers, a credit manager and a display manager.

The plaintiff was initially employed by Lerner stores in March of 1952 as a "wrapper" in its Dayton, Ohio store. Shortly thereafter, she resigned that position, but was reemployed as a "presser" in August of 1952 at the Downtown store in Houston, Texas. She again resigned in May of 1953, but was once more reemployed two weeks later. It is not clear whether she worked for Lerner stores the remainder of 1953 and in 1954. However, it is clear that she was employed from November, 1954 to August, 1955, as a maid in the Downtown store's display department. In March of 1963 she was employed for approximately three weeks as a maid in Houston's Northline store. Finally, in August of 1965 she was employed as display manager at the Northline store. On May 13, 1966, plaintiff left a note for the store manager before departing on her scheduled vacation. Although subject to various interpretations, that note indicated that plaintiff was dissatisfied with her job, that she felt she was receiving less pay than other managers, that she was probably going to work for another retail firm during her vacation, and, finally, that she felt other managers had received an employment privilege that she had not.[1] The

---

[1]

May 13, 1966

Mr. Deese,

Dear Sir,

You have been a wonderful boss, and I am going on vacation. I tried to please you, to be sure that every window was in very good shape.

Now, this note, is a "food for thought."

1. I am your hardest working Manager, ask any one in Northline, for I have some offers.

2. Some people do display because they like it, I do, other for the pay.

3. Sir, Lerners, is too poor a firm, to pay a living salary.

I have been here 10 months, I haven't had a day off with pay, others have, I am your seller, Windows sell, I have to do my best.

Sir, I have a nice offer, and I want to make it plain, the vacation will be spent, working for this firm, for I can't really believe their offer, I may or may not.

I am not quitting, I owe you, on my charge account, I shall return, and Sir,

note makes no charge or reference to race or racial discrimination. The store manager, although unsure at first as to the note's proper interpretation, responded by sending a note to plaintiff accepting her resignation. He then placed an advertisement in a local newspaper, and, shortly thereafter, hired a white retired Lerner's employee, a Mrs. Stephens, as a replacement. The defendant concedes that these events are tantamount to a formal discharge of plaintiff.

After her discharge, plaintiff on July 16, 1966, filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging racial discrimination on the basis that (1) she was paid less than white display managers; and (2) that she was discharged solely because defendant desired to replace her with a person of the white race. After an investigation the EEOC concluded that there was no disparity in wages and that she was not replaced for discriminatory reasons. However, upon a request for reconsideration based upon new evidence presented by the plaintiff, the EEOC reversed its earlier position and ruled that reasonable cause did exist to believe that defendant had violated the Civil Rights Act of 1964. That new evidence included plaintiff's allegations that (1) other display managers worked 5 days and were paid for 6 days work;[2] (2) she was unjustifiably harassed by her fellow employees and by a store detective when the 6 days pay for 5 days worked privilege was discontinued after she also attempted to participate in its benefits; (3) her note to the store manager could not be interpreted as a resignation; (4) a Negro was given the display manager's job following her departure only after defendant learned of the charge filed before the EEOC; and (5) plaintiff had also been unlawfully discharged from defendant's store in 1963. After conciliative efforts failed, plaintiff filed this action.

The defendant contends that the only issues before the Court are (1) whether plaintiff was unlawfully discharged by defendant; and (2) whether defendant discriminated against her by paying her a salary that was less than that of the white display managers. Those were the only allegations presented in the plaintiff's initial charge to the EEOC. The plaintiff contends that, although not expressly made a class action under Rule 23 of the Federal Rules of Civil Procedure, this Court should grant relief to all Negro employees of the defendant. This position under certain circumstances finds legal support in the language of Jenkins v. United Gas Corporation, 400 F.2d 28, 33 (5th Cir. 1968), wherein it is stated that "[w]hether in name or not, the suit is perforce a sort of class action for fellow employees similarly situated." Further support comes from Oatis v. Crown Zellerbach Corporation, 398 F.2d 496 (5th Cir. 1968), wherein a class action was held to be permissible, although only one of its members had presented his grievance to the EEOC.

██ More analogous to this situation, however, is Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970). In the *Sanchez* decision the permissible scope of a complaint was stated to be limited "to the scope of the EEOC investigation which can reasonably be ex-

---

I slaved to open this store, why couldn't I be reinstated?

I know other who have, so it's not new.

I know both of your Display Managers salary, or what I have been told, look at their work and if you think I don't have it, sorry, others do, (smile).

Mr. Deese, I have been told your other managers salary here, yes, 6 day, of standing around, while I slave in those hot windows to sell for them.

By the way, what stopped there off day with pay, mine never was?

I say again, I shall return, I want $100.00 5 days remember, I am also a presser, a wonderful salelady, I have the experience. If your answer is No don't fire me. (smile) Sincerely
     Barnes

2. This clearly is a misstatement. Plaintiff undoubtedly was referring to the sales managers of the Northline store and not "other display managers."

pected to grow out of the charge of discrimination." 431 F.2d at 466. It is this Court's conclusion that the above standard requires a reasonable relevancy between the EEOC investigation and the scope of the civil action. Here, the scope must be limited to issues of whether plaintiff was discriminatorily discharged and whether plaintiff or other Negro employees received less pay than white employees for comparable work. Of course, defendant's other forms of unlawful discrimination could be relevant to this cause, since defendant's "pattern of action" is material to a determination of whether specific unlawful employment procedures were practiced. *See* Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, 418 F.2d 355 (6th Cir. 1969).

■ After hearing all of the evidence, it is obvious to this Court that the basic issues for decision are factual and not legal. As a result, the burden of proof is an important determinant. The defendant contends that plaintiff must prove by a preponderance of the evidence that a violation of the Act occurred. On the other hand, plaintiff contends that its burden is a lesser one. It is this Court's opinion that the defendant's position is the more persuasive and that it is supported by substantial authority. *See* Dewey v. Reynolds Metals Co., 429 F.2d 324, 328 (6th Cir. 1970). *See, e. g.,* United States v. Jacksonville Terminal Co., 316 F.Supp. 567, 615–616 (M.D.Fla. 1970); ◄ Green v. McDonnell-Douglas Corp., 318 F.Supp. 846, 850 (E.D.Mo. 1970). *See generally,* McBeth v. Board of Education, 300 F.Supp. 1270, 1275 (E.D.Ark.1969). The preponderance of the evidence test is therefore applied in this case, although as a practical matter the decision of the Court would be precisely the same if a lesser test had been applied.

■ Prior to the Court's assessment of the various contentions relating to discrimination presented by the parties, it must be recognized that there are numerous factual areas in this cause in which the evidence is in sharp conflict, thereby obligating the Court to assess credibility of the witnesses in order to determine what version of an incident is more believable. This the Court has done by carefully reviewing the various claims leveled by the parties.

At the trial the plaintiff relied heavily, in demonstrating discrimination, upon the incident wherein she allegedly signed in on the employee time sheet on her day off so as to qualify for an extra day's pay, as the other managers allegedly did. When the privilege was thereafter discontinued as to all managers, her professed efforts to achieve equal treatment created animosity towards her, and resulting harassment, on the part of the white employees. Apparently, the plaintiff is contending that the store manager discontinued this so-called privilege, rather than permit a member of a minority race to participate in its benefits. However, contrary to the plaintiff's contention, the evidence clearly reflects that as a consequence of the Easter selling season the sales managers had worked approximately 16 to 24 overtime hours. Their employment contracts provided that they were to receive half time for all overtime hours worked.[3] They preferred to take time off, rather than to receive this small rate of overtime pay. The store manager, at their request, permitted these sales managers to adopt a practice whereby they received an hour off with pay for every hour they had worked overtime during a "rush" season. As a result, these sales managers signed in on the time sheet and were paid for 6 days work during a period of 2 or 3 weeks after Easter, but actually worked only 5 days per week. The practice

---

3. Their employment contracts provided for compensation on the basis of a variable workweek or coefficient table wage plan. As a result, they received a stated salary per week for all hours worked. However, for all hours worked in excess of forty per week they received an additional half time their regular hourly rate. *See* Stipulation H, Pretrial Order (January 4, 1971).

was terminated when the time off owed by the store to these employees under this arrangement expired. Plaintiff's display work during "rush" periods, on the other hand, did not fluctuate to the same extent as that of the sales managers. As a result, she was rarely called upon to work overtime. Therefore, the alleged privilege of which the plaintiff complains never applied to her.

As to the harassment generated by plaintiff's attempt to take advantage of the above stated employment privilege, primary reliance is placed upon two incidents, one involving a store detective and the other a sales manager. However, the testimony preponderates in favor of the fact that the alleged harassment of the plaintiff in both incidents is unfounded. More importantly, these incidents occurred prior to her professed attempt to receive the benefits of the "signing-in" privilege extended to the sales managers.[4]

Plaintiff also presented evidence that she was paid less than Mrs. Stephens, the white display manager who replaced her. Although Mrs. Stephens did receive a higher salary, she had 15 years of prior experience as opposed to plaintiff's 5 years. Mrs. Stephens was also experienced in the sales operations of the store and contracted to serve as relief sales manager in addition to her normal display work. However, because of her age, she could not adequately do the job. She was therefore replaced by Mrs. Johnson, a Negro. Although Mrs. Johnson was paid less than Mrs. Stephens, it was again on the basis of experience, as she had essentially no experience as a display manager.[5] Additionally, it should be noted that the testimony showed that the display managers in all of defendant's Houston area stores are of the Negro race and that two of them received a higher wage rate than Mrs. Stephens.[6]

Evidence was also presented by the plaintiff to show that she was discharged in 1963 for racial reasons. However, the defendant introduced documentary evidence as well as testimony at the trial to show that plaintiff was hired only temporarily, as a maid, in 1963 in order to facilitate the readying of the Northline store for its initial opening.[7]

The plaintiff presented unpersuasive evidence that defendant's stores have a policy of discrimination or that any Negroes have applied for managerial positions and have been turned away because of racial reasons. The testimony of plaintiff's witnesses was to the effect that they were not aware of many Negro persons holding supervisory positions in the Lerner organization. The defendant, on the other hand, presented credible testimony that there is no such policy of exclusion, and, more importantly, that there are several members of the minori-

4. Compare the totality of plaintiff's proof that was offered to establish that she was harassed or discharged because she opposed a discriminatory employment practice with that presented in Pettway v. American Cast Iron Pipe Co., 411 F.2d 998 (5th Cir. 1969).

5. Plaintiff received a salary of $60 a week for a 40 hour week. She also received time and one-half of her regular wage rate for all hours worked in excess of 40 hours. Mrs. Stephens contracted to work a 48 hour week for which she received $75.81. She received one-half time of her regular rate for all overtime hours worked. Mrs. Johnson, received a salary of $56 a week for a 40 hour week. She received time and one-half her regular wage rate for all hours worked in excess of 40 hours.

6. Ruth Cox, at the Gulfgate store, received $70 per week for 40 hours, with time and one-half her regular wage rate for all overtime work; P. Guillory, at the Pasadena store, received $56 per week with time and one-half her regular wage rate for all overtime work; E. Hemphill, at the Downtown store, received $79.30 per week on a 48 hour contract basis.

7. The employment application submitted by plaintiff when she applied for the display manager position in 1965 reflects that the reason she had left Lerners in 1963 was because she had been hired temporarily "to help out during the opening" of the Northline store.

ty races holding sales managerial positions.[8]

The defendant presented substantial evidence and testimony that (1) the store manager had received a letter from a "charge" customer which set out an incident in which plaintiff had screamed at her for physically inspecting merchandise being prepared for display; (2) the store manager was forced to have other employees remove merchandise out of the display window at the request of customers when the plaintiff refused to do so; (3) the plaintiff had been reprimanded several times for laxity in commencing her display duties and because of her poor attitude in carrying out those duties; (4) plaintiff was constantly getting into arguments with her fellow employees and creating undesirable scenes as a result thereof;[9] (5) plaintiff refused to take orders or cooperate with the sales manager; and (6) plaintiff was discharged from another retail store in 1968 because she could not get along with her fellow employees and because she created a dramatic scene in front of customers.

In weighing the evidence in this matter, it is important to note that an employer may discharge an employee for any reason except discrimination or because of practices made unlawful under Title VII. The testimony and evidence before the Court fails to establish by its greater weight, or preponderance, that plaintiff was discharged for racial prejudice. It is apparent from the record that defendant's reasons for discharging plaintiff were motivated solely and simply by the plaintiff's inability to get along with her fellow employees and because of the lax attitude which she demonstrated in carrying out her duties. The burden of proving reasons apart from these was on the plaintiff. This she failed to do. The evidence offered by the plaintiff, particularly her own lack of candor and contradictory testimony, reveals that she misconstrued routine store procedures and her random conflicts with fellow employees and, as a result, formulated the alleged discrimination without justifiable facts in support thereof. This is not a case that turns on the issue of race; instead, it turns on the personalities of people and their ability to work together. As a result, the plaintiff's evidence in this case falls far short of its aim.

The Court finds and concludes by the evidence before it that:

(a) Plaintiff has not shown that defendant was motivated by racial prejudice in contradiction of 42 U.S.C. § 2000e–2(a) or 3(a), the Civil Rights Act of 1964;

(b) Defendant's discharge of plaintiff and refusal to reemploy her were based on plaintiff's unsatisfactory conduct as an employee which justified the discharge;

(c) Plaintiff has not shown that she was discriminated against by her salary or privileges of employment;

(d) Plaintiff has not shown that other Negro employees were discriminated against by their salary or privileges of employment;

(e) Plaintiff has not shown that defendant maintained a policy or practice of excluding persons of the minority races from managerial positions.

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. This is and constitutes a Final Judgment herein.

The Clerk will notify counsel.

8. Compare the nature and scope of plaintiff's evidence to establish discrimination by statistical implication with the detailed employment statistics presented in Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970).

9. After one such incident the store manager gave plaintiff a book entitled "How to Win Friends and Influence People" and requested that she read it to help solve her compatibility problems.