EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff,
and
Josephine McGee, Plaintiff-
Intervenor,

v.

KALLIR, PHILIPS, ROSS, INCORPO-
RATED, a New York Corporation,
Defendant.

Nos. 74 Civ. 3234, 75 Civ. 401.

United States District Court,
S. D. New York.

July 31, 1975.

**68**

William A. Carey, Gen. Counsel, William L. Robinson, Associate Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., Delores Wilson, Regional Atty., Dona Kahn, Associate Regional Atty., Paul J. Gontarek, Asst. Regional Atty., Equal Employment Opportunity Commission, Philadelphia Regional Litigation Center, Philadelphia, Pa., Ronald Copeland, Regional Counsel, Equal Employment Opportunity Commission, New York Regional Office, New York City, for plaintiff.

O'Dwyer & Bernstein, New York City, for plaintiff-intervenor; Brian O'Dwyer, Thomas A. Holman, New York City, of counsel.

Davis, Gilbert, Levine & Schwartz, New York City, for defendant; Edward S. Patterson, David G. Lehv, New York City, of counsel.

## OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

This action, which had its origin in a charge of sex discrimination in the payment of wages, is now narrowed to a charge of retaliatory conduct.

The action was commenced by the Equal Employment Opportunity Commission ("EEOC") against Kallir, Philips, Ross, Inc. ("KPR"), an advertising agency, charging that it suspended and later discharged Josephine McGee in retaliation for her filing a charge of sex discrimination against KPR and for her opposition to KPR's alleged unlawful employment practices in violation of section 704(a) of Title VII of the Civil Rights Act of 1964, as amended.[1] Josephine McGee (plaintiff) was granted leave to intervene.[2]

### I

Plaintiff, at the time of her discharge, was employed as a senior account executive by defendant, which numbered among its clients The Upjohn Company, a pharmaceutical house. She first entered defendant's employ in 1967 as an administrative assistant and from time to time was promoted to positions of increased responsibility with commensu-

---

1. 42 U.S.C. § 2000e–3(a). The action was instituted pursuant to § 706(f)(1) of the Act, 42 U.S.C. § 2000e–5(f)(1), with jurisdiction grounded on § 706(f)(3), 42 U.S.C. § 2000e–5(f)(3).

2. § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1). See Fed.R.Civ.P. 24(a)(1). McGee, together with the EEOC, moved for preliminary

injunctive relief. Because the central issue presented a question of fact as to the defendant's motivation in discharging McGee, the court concluded it could not grant preliminary relief on the basis of the conflicting affidavits before it and consolidated the hearing on the application for preliminary relief with an advanced trial on the merits, Fed.R.Civ.P. 65(a)(2).

rate salary increases. In December 1972, she was assigned to the Upjohn account under Jay Lilker, a senior vice president of defendant, who was the account supervisor, and John Kallir, president and principal stockholder of KPR, who was the management representative on the account.

Plaintiff, whose annual salary then was $18,000, learned that a male senior account executive was paid $25,000. On December 4th, she requested of Kallir that her salary be brought into parity with that of her male counterpart. Kallir advised plaintiff that the matter would be considered by defendant's executive committee in April 1973, prior to the sixth anniversary of her employment. Dissatisfied with the lack of immediate favorable action, plaintiff filed a charge of sex discrimination with the New York City Commission on Human Rights ("NYCCHR")[3] against KPR based upon the salary differential. In connection with its investigation of the charges, NYCCHR requested an objective job description of plaintiff's position which, rightly or wrongly, she felt could not be obtained from the defendant. Plaintiff thereupon obtained from Phyllis Korzilius, the product manager at Upjohn Company who worked with plaintiff, a letter containing the necessary information.

On March 13, 1973, in accordance with NYCCHR procedure,[4] a fact finding conference was held relative to McGee's claim, attended by Commission representatives, plaintiff, Kallir and other representatives of defendant, including its attorney. In response to Kallir's statement during the course of the conference as to the scope of plaintiff's activities, a Commission supervisor produced the Korzilius letter. The KPR representatives reacted with displeasure, to say the least; that they resented that plaintiff had contacted its client to ob-

tain the letter admits of no dispute. From the time plaintiff first brought up the subject of alleged discrimination in salary on December 4th, followed by the filing of her complaint and up to her suspension, no KPR official expressed any displeasure because of her charge, or indicated that any action would be taken against her. She continued to perform her usual duties.

On March 26th, Kallir, without any discussion, handed plaintiff a letter which informed her that she was suspended from her duties but that her salary would continue. The stated reason for this action was:

> "The protracted nature of our adjourned hearing before the Human Rights Commission; the course you've chosen to follow by involving various individuals, both on the agency's staff and at Upjohn; and your divisive behavior make it increasingly difficult for us to carry on our normal day-to-day activities and provide our client with the service they [sic] require."

The following day defendant circulated among its employees a memorandum which, among other matters, stated that it had granted a leave of absence at full pay to plaintiff; that while procedures dragged on at the NYCCHR, defendant saw "no reason at first why they should interfere with [plaintiff's] role in the agency. Increasingly, though, [plaintiff] has taken actions which could prove detrimental to our relationship with Upjohn. The agency-client relationship is so sensitive and dependent on complete mutual trust that we cannot allow it to be undermined through divisiveness or personal rancor. Thus, she left us no choice but to act as we did." Plaintiff perforce accepted the situation. She promptly notified the NYCCHR of her suspension and upon its request signed a new complaint on March 27th, charging the defendant with retaliatory

---

3. § 706(c) of the Act, 42 U.S.C. § 2000e–5(c), requires individuals to resort to available state or local remedies for at least 60 days before filing a charge with the EEOC.

4. N.Y. Executive Law § 297(3) (McKinney's Consol.Laws, c. 18, 1972).

action. On April 23, she filed a similar charge with the EEOC.[5]

Plaintiff was continued on leave of absence with pay until May 15, 1973, when defendant tersely wrote to her: "In view of the circumstances, we have decided to discontinue your checks." The "circumstances" were not stated. There had been no communication between plaintiff and defendant from March 26, when she was put on leave, to May 15th, when she was notified she would no longer be paid.

## II

■■ The issue, as noted at the outset, is whether the defendant suspended and later discharged plaintiff in retaliation against her for filing sex discrimination charges with the NYCCHR. Thus the merits of plaintiff's charge of sex discrimination are not before the court.[6] Plaintiff contends she was discharged by defendant in retaliation for her having filed the sex discrimination charge and for assisting the NYCCHR in investigating this charge.[7] The defendant denies that it was so motivated and contends that its action was a legitimate response (1) to plaintiff's conduct in involving the agency's client, Upjohn, in her charge by soliciting evidence from its employees, and (2) her disruptive actions at a preliminary presentation by the agency to Upjohn in early February 1973. The burden of proof is upon the plaintiff to sustain her claim by a fair preponderance of the credible evidence.[8] Upon the entire evidence, including the demeanor of witnesses who testified at the trial, I find that plaintiff has sustained her burden of proof.

## III

### A

■■ Originally, one of the reasons assigned by defendant in justification for plaintiff's discharge was that she had filed a charge of sex discrimination, and, in one instance, allegedly had urged an employee to file a similar charge. Defendant now concedes that absent disruptive conduct, of which there was no proof, plaintiff was within her legal rights in informing her co-workers that she had filed a claim of discrimination against defendant and that they had a right to do likewise. The defendant, as to this phase of its defense, now recognizes it "could not . . . base its decision to discipline plaintiff because of this activity."[9] However, despite this belated acknowledgment, the evidence requires a finding that one of the reasons for defendant's conduct was McGee's discussing her charge with other female employees. Section 704(a) of Title VII forbids "discrimination against . . . employees for attempting to protest or correct allegedly discriminato-

---

5. On September 24, 1973, the EEOC determined that there was reasonable cause to believe that the charge of retaliatory discharge was true; it also determined that there was insufficient evidence to resolve plaintiff's original charge of discriminatory conduct with respect to terms and conditions of employment. Efforts to resolve the controversy by conciliation failed, following which this action was commenced.

6. An employee need not establish the validity of his original claim to establish a charge of employer retaliation for having made the original charge or otherwise engaging in conduct protected by § 704(a). *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1005 (5th Cir. 1969) ; *Bradford v. Sloan Paper Co.*, 383 F.Supp. 1157 (N.D.Ala.1974) ; *Francis v. American Tel. & Tel. Co.*, 55 F. R.D. 202 (D.D.C.1972).

7. § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), provides:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

8. *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ; *Christian v. General Motors Corp.*, 341 F. Supp. 1207, 1208 (E.D.Mo.1972), *aff'd without opinion*, 475 F.2d 1407 (8th Cir. 1973).

9. Defendant's Post Trial Brief p. 21.

ry conditions of employment," [10] and it necessarily protects an employee from retaliation for merely advising fellow employees of their rights under the law. In discharging plaintiff, at least in part because she engaged in these protected activities, defendant violated the statute.

## B

The defendant claims that its action was justified based upon plaintiff's conduct concerning the Upjohn account. Here defendant cites two incidents, her conduct (1) in obtaining the letter from Korzilius, Upjohn's product manager, and (2) at the presentation of an advertising program to Upjohn in early February when it is claimed she engaged in disruptive behavior which imperilled retention of that account.

The first claim can be readily disposed of as lacking in substance. The defendant contends that it properly discharged plaintiff because she requested the assistance of Upjohn employees [11] in obtaining evidence in support of her charge and sought to involve them in her controversy so that Upjohn would apply some pressure on her behalf. The defendant asserts that this was the primary cause for its action. Plaintiff had been requested by the NYCCHR to obtain an objective description of her job. There was nothing wrong or disruptive

for plaintiff to request and obtain the letter from Korzilius, the Upjohn representative with whom she worked and who was familiar with her functions. Plaintiff's actions were circumspect; indeed, when plaintiff informed Korzilius that she had filed charges she asked Korzilius to keep it confidential. While the letter may have been an abrasive factor in the relationship between defendant and plaintiff, the defendant concedes that it had no effect on the client relationship.

Section 704(a) also prohibits employer retaliation because an employee assists or participates *in any manner* in an investigation under Title VII.[12] Defendant's violent reaction upon the production of the Korzilius letter at the March 13 NYCCHR fact finding conference, followed closely thereafter by its decision to suspend plaintiff, reveal that the solicitation of the letter was so strongly resented that it was a substantial cause of plaintiff's suspension.

Under some circumstances, an employee's conduct in gathering or attempting to gather evidence to support his charge may be so excessive and so deliberately calculated to inflict needless economic hardship on the employer that the employee loses the protection of section 704(a), just as other legitimate civil rights activities lose the protection of

---

10. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796, 93 S.Ct. 1817, 1821, 36 L.Ed. 2d 668 (1973).

11. Other than the request to Korzilius, McGee solicited no other letters from Upjohn employees. The only other occasion when McGee involved an Upjohn employee was when she asked James Penrose if she could use in connection with her charge an unsolicited letter from him complimenting her job performance.

12. KPR argues that § 704(a) does not apply to its conduct because the statute only protects the activity of individuals connected with "an investigation, proceeding, or hearing *under this subchapter*. [Title VII]." (emphasis supplied) Claiming that only EEOC investigations are investigations "under this subchapter," it contends that while it was aware of plaintiff's pending charge

before the NYCCHR, since it was not notified that she had filed a charge with the EEOC until after it had discharged her on May 15, 1973, it could not have been retaliating against her for assisting in investigations, etc., "under this subchapter." The argument is frivolous. Resort to the NYCCHR was required in this instance by § 706(c) of Title VII. Moreover, the statute provides protection for those who oppose "any practice made an unlawful employment practice by this subchapter" and clearly McGee's filing a complaint with the NYCCHR and cooperating with its investigation is covered by this language. It is not necessary to file a complaint with the EEOC before § 704(a)'s protection from retaliatory conduct becomes applicable. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

section 704(a) when they progress to the point of deliberate and unlawful conduct against the employer.[13] But this is not such a case. The defendant concedes that the information sought by plaintiff from Korzilius was relevant to her claim and that she had a legitimate purpose of obtaining it. Plaintiff's statutory right to engage in the protected activity of assisting and participating in the investigation of her charge against defendant would be without substance if defendant could justify her discharge based upon her discreet solicitation of a letter setting forth the nature of her work because of its excessive squeamishness about relations with a client.

■ Section 704(a) is to be broadly construed to protect the rights of employees under Title VII.[14] The Act contemplates that employees who may feel aggrieved because of alleged discriminatory conduct will initiate and participate in the process to vindicate their rights without fear of reprisal. Since the enforcement of Title VII rights is necessarily dependent on individual complaints, freedom of action by employees presenting grievances to agencies must be protected against the threat of retaliatory conduct by employers who may resent that they are charged with discrimination.[15] Rigid enforcement against retaliatory action is required to assure the effectiveness of the Act. Defendant violated the Act when it sus-

pended and discharged plaintiff for her legally protected activity, requested by the NYCCHR, which caused no discernible effect on the agency's relationship with Upjohn. The defendant's claim that retention of good rapport with its client required that plaintiff be taken off the account is belied by the record. The fact is that nothing plaintiff said or did in any way affected the relationship between defendant and Upjohn. In addition to the evidence that plaintiff's conduct had no effect on that relationship, Kallir testified that Upjohn's product manager told him several times he was sorry plaintiff had been taken off the account.

■ Thus the issue narrows down to defendant's second claim that it suspended plaintiff because of her conduct in early February 1973 at a preliminary presentation of a proposed advertising campaign to Upjohn when she allegedly interrupted her superior and was otherwise disruptive. Defendant, of course, had the right to discharge plaintiff in the event of inadequate job performance or for failure to follow orders at a presentation to a client.[16] However, the evidence abundantly establishes that the purported justification for defendant's discharge—plaintiff's alleged behavior at the February 1973 presentation—was sheer pretext advanced for the first time at the trial, more than two years after the event.[17]

13. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

14. *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1005–07 (5th Cir. 1969); *Held v. Missouri Pac. R.R.*, 373 F.Supp. 996, 1004 (S.D.Tex.1974); *cf. NLRB v. Scrivener*, 405 U.S. 117, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972).

15. *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1005 (5th Cir. 1969).

16. *See Gillin v. Federal Paper Board Co.*, 479 F.2d 97, 101 (2d Cir. 1973); *Bradington v. IBM Corp.*, 360 F.Supp. 845, 853–55 (D. Md.1973), *aff'd without opinion*, 492 F.2d 1240 (4th Cir. 1974); *McFadden v. Baltimore S.S. Trade Assoc.*, 352 F.Supp. 403, 411–12 (D.Md.1973), *aff'd* 483 F.2d 452 (4th Cir. 1973); *Barnes v. Lerner Shops of Tex-*

*as, Inc.*, 323 F.Supp. 617, 622 (S.D.Tex. 1971).

17. Even if defendant was in part motivated by this incident, the court's finding that its decision was also motivated by unlawful factors makes the suspension illegal. *See NLRB v. George J. Roberts & Sons, Inc.*, 451 F.2d 941, 945 (2d Cir. 1971); *Smith v. Sol D. Adler Realty Co.*, 436 F.2d 344, 349–50 (7th Cir. 1970); *NLRB v. Gladding Keystone Corp.*, 435 F.2d 129, 131–32 (2d Cir. 1970); *NLRB v. Milco, Inc.*, 388 F.2d 133, 138 (2d Cir. 1968); *NLRB v. Park Edge Sheridan Meats, Inc.*, 341 F.2d 725, 728 (2d Cir. 1965); *NLRB v. Great Eastern Color Lithographic Corp.*, 309 F.2d 352, 355 (2d Cir. 1962), *cert. denied*, 373 U.S. 950, 83 S. Ct. 1680, 10 L.Ed.2d 705 (1963); *NLRB v. Jamestown Sterling Corp.*, 211 F.2d 725, 726 (2d Cir. 1954).

After plaintiff made her demand for pay parity early in December 1972, she continued to service the Upjohn account. Her qualifications and expertise to perform her functions are not in dispute. In February 1973, together with Lilker, her superior in charge of the account, plaintiff participated in presenting before a group of Upjohn executives a proposed advertising and marketing campaign for one of Upjohn's products. The defendant asserts that she interfered with the presentation by interrupting and improperly criticizing Lilker in the presence of the Upjohn representatives; that since the presentation is the end product of the combined effort of defendant's staff and intended to gain the client's acceptance of the program, a united front is required; and that plaintiff's behavior was detrimental to defendant's interest and "could if left to continue seriously affect [its] relationship with Upjohn."

Despite this charge of unseemly conduct at the preliminary February presentation, defendant required that plaintiff participate in the second and final presentation which took place in early March. It is conceded that on this occasion no untoward incident occurred and that the presentation was made in a competent manner. If, as defendant now asserts, plaintiff's alleged obstructive conduct at the February meeting was the reason for her suspension, one is moved to inquire why action had not been taken at that time and why plaintiff was called upon to continue her duties in March at the second presentation.

Significantly, the March 13, 1973 NYCCHR fact finding conference took place soon after the March presentation. Yet no mention was made of the February presentation. Other facts indicate beyond peradventure that defendant's reliance on the February presentation is sheer afterthought. Kallir's letter of March 26th relieving plaintiff of her duties makes no mention of the February presentation, nor does his memorandum of March 27th to the staff of the agency. Neither Kallir nor Lilker ever talked to plaintiff about her conduct at that presentation. Immediately after plaintiff's suspension with pay, a representative of the NYCCHR asked Kallir about his action; yet he never mentioned the February presentation.

█ And of even greater significance is the fact that Lilker, the senior KPR official at the February presentation whom plaintiff allegedly interrupted and criticized, did not testify. As the individual allegedly involved in the incident and an executive officer of responsibility, one would have expected to hear his version of what, if anything, transpired. The failure of the defendant to present his testimony permits the inference that his testimony would not have supported the defendant's eleventh hour attempt to present a good faith business justification for its action.[18]

18. *Interstate Circuit, Inc. v. United States,* 306 U.S. 208, 226, 59 S.Ct. 467, 83 L.Ed. 610 (1939) ; *Local I.B.T. v. United States,* 291 U.S. 293, 297, 54 S.Ct. 396, 78 L.Ed. 804 (1934) ; *Bass v. Hutchins,* 417 F.2d 692, 698 (5th Cir. 1969) ; *San Antonio v. Timko,* 368 F.2d 983, 985 (2d Cir. 1966) ; *N. Sims Organ & Co. v. SEC,* 293 F.2d 78, 80–81 (2d Cir. 1961), *cert. denied,* 368 U.S. 968, 82 S. Ct. 440, 7 L.Ed.2d 396 (1962) ; *Charles of the Ritz Distrib. Corp. v. FTC,* 143 F.2d 676, 679 (2d Cir. 1944) ; *SEC v. Kelly, Andrews & Bradley, Inc.,* 341 F.Supp. 1201, 1205 (S.D.N.Y.1972) ; Wigmore, Evidence § 289 (3d ed. 1940) ; McCormick, Evidence § 249 (1954). *See also United States v. Blakemore,* 489 F.2d 193, 195 (6th Cir. 1973) ; *United States v. Noah,* 475 F.2d 688, 691 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54 (1973) ; *United States v. Evanchik,* 413 F.2d 950, 953 (2d Cir. 1969) ; *United States v. Dibrizzi,* 393 F.2d 642, 646 (2d Cir. 1968) ; *United States v. Llamas,* 280 F.2d 392, 393–94 (2d Cir. 1960) ; *United States v. Beekman,* 155 F.2d 580, 584 (2d Cir. 1946) ; *United States v. Dolinger,* 384 F.Supp. 682, 687 (S.D.N.Y.

The objective facts require rejection of defendant's contention that one of the reasons for suspending plaintiff was her conduct at the February preliminary presentation; they compel the conclusion that the real reason for her suspension and subsequent discharge was in reprisal because she had filed the sex discrimination charge and engaged in activity protected by the Act. The court finds that defendant's acts were in violation of section 704(a) of Title VII and that plaintiff and the EEOC are entitled to judgment, which shall include back pay to plaintiff,[19] reduced by the amount she earned or reasonably could have earned in other employment since her discharge.[20] The award shall also include bonuses, profit sharing and other benefits to which plaintiff would have been entitled had she been continued in her employment. Consistent with the statutory policy of encouraging individuals to protect Title VII rights, plaintiff's counsel will be allowed reasonable attorney's fees upon proper application to the court.[21]

The foregoing, together with the parties' stipulation of facts, shall constitute the Court's Findings of Fact and Conclusions of Law.

Submit order in accordance with the foregoing.

1974); *United States v. Kulp*, 365 F.Supp. 747, 766 (E.D.Pa.1973); *United States v. Pawlak*, 352 F.Supp. 794, 798 (S.D.N.Y. 1972).

19. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); "[G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."

20. *See* § 706(g), 42 U.S.C. § 2000e–5(g).

21. § 706(k), 42 U.S.C. § 2000e–5(k). *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Reed v. Arlington Hotel Co.*, 476 F.2d 721 (8th Cir.), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973); *United States v. Georgia Power Co.*, 474 F.2d 906, 927 (5th Cir. 1973); *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002, 1008 (9th Cir. 1972); *Rowe v. General Motors Corp.*, 457 F.2d 348, 360 n.26 (5th Cir. 1972); *Brown v. Gaston County Dyeing Mach. Co.*, 457 F. 2d 1377, 1383 (4th Cir.), *cert. denied*, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972). *See Northcross v. Board of Educ.*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).