Fannie SIMS, Plaintiff,

v.

**MME. PAULETTE DRY CLEANERS,
Noubar Mahdessian, Ann Mahdessian,
Steven Doe, Henry Doe and Harry Doe,
Defendants.**

**No. 82 Civ. 5438 (MEL).**

United States District Court,
S.D. New York.

Feb. 14, 1984.

David W. Weschler, Community Law Offices, New York City, for plaintiff; Kenneth W. Taber, New York City, of counsel.

Arthur L. Diamond, Melville, N.Y., for defendants Mme. Paulette Dry Cleaners, Noubar Mahdessian and Ann Mahdessian.

LASKER, District Judge.

■ Fannie Sims ("Sims") filed this action alleging employment discrimination and retaliation against Mme. Paulette Cleaners ("Mme. Paulette"), Noubar Mahdessian, and Ann Mahdessian[1] in August, 1982 charging, *inter alia*, a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[2] Sims moves for partial summary judgment primarily on the

ground that defendants' admissions establish that they altered the conditions of her employment and ultimately discharged her because she filed a sex discrimination complaint against them with the Equal Employment Opportunity Commission ("EEOC") so that she is entitled to judgment on the retaliation claim as a matter of law.[3] Under Title VII, the act of retaliation is a separate violation, in and of itself, without regard to the plaintiff's success or failure on the merits of the underlying discrimination claim. 42 U.S.C. § 2000e–3;[4] *EEOC v. Kallir, Philips, Ross, Inc.*, 401 F.Supp. 66, 70 at n. 6 (S.D.N.Y.1975), *aff'd without opinion*, 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

## I.

Sims worked at Mme. Paulette as a presser from 1973 until she was discharged on April 30, 1982.[5] Sims' salary was based on the number of garments she pressed. As to her complaint of sex discrimination, Sims contends that from December, 1981 until her discharge in April, 1982, she was intentionally given fewer garments to press than was her male co-worker; that she was therefore paid less than her male co-worker; and that the defendants intentionally divided the pressing work so that she would be paid less than her male co-worker. It is uncontested that Sims repeatedly complained to the Mahdessians about the

1. Mme. Paulette, Noubar Mahdessian and Ann Mahdessian are the defendants against whom there are allegations of retaliation. The additional named defendants are Steven Doe, Henry Doe, and Harry Doe.

2. Plaintiffs also seek redress under the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, 29 U.S.C. § 201 *et seq.*; § 296 of the New York Human Rights Law; § 194 of the New York Payment of Wages Act; and § 198–c of the New York Payment of Wages Act. As the provisions of these laws are nearly identical to § 704(a) of Title VII, this opinion rests on decisions under Title VII.

 Section 704(a) provides in pertinent part:
 "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment

practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."

3. Several other courts have granted plaintiffs' motions for summary judgment where the employers' retaliation was clear. *See, e.g., EEOC v. Virginia Carolina Veneer Corp.*, 495 F.Supp. 775 (W.D.Va.1980), *appeal dismissed*, 652 F.2d 380 (4th Cir.1981); *Robinson v. Middendorf*, 13 E.P.D. ¶ 11,415 (D.D.C.1976).

4. *See also* § 215 of the Equal Pay Act, and New York Executive Law §§ 296(1), (7).

5. While the exact dates of Sims' employment are disputed, the parties agree that she worked for Mme. Paulette from 1973 until her discharge in 1982.

work division. Unsatisfied with their denials of discrimination, Sims filed a sex discrimination complaint with the EEOC on March 26, 1982.

As to Sims' claim of retaliation, to which this motion relates, the following facts are undisputed: after he received a copy of the complaint in the mail, Noubar Mahdessian telephoned Sims at home, told her that he had received the EEOC complaint, and that from that day forward she was required to report to work by 8:00 A.M. Sims had never been required, as a condition of her employment, to report to work by 8:00. While she had been requested to arrive at 8:00, the Mahdessians had allowed her to report between 9:00 and 11:00 because they knew that she cared for her invalid mother. The 8:00 worktime became a condition of her continued employment only after defendants learned of her formal discrimination claim. Another presser with special circumstances was permitted to arrive at work after 9:00; all but one of the remaining pressers routinely arrived later than 8:00.

After Noubar Mahdessian's telephone call, Sims began arriving at work between 8:00 and 8:45 A.M. On April 9 and again on April 25, Sims received written warnings from defendants admonishing her that if she did not arrive "by 8:00 sharp", she would be discharged. No employee at Mme. Paulette's, including Sims, had ever received a written warning, nor has any employee at Mme. Paulette's received a written warning since then.

On April 12, defendants began to monitor plaintiff's arrival time through the surveillance of other employees. No employee at Mme. Paulette's had ever been monitored, nor has any employee at Mme. Paulette's been monitored since then.

On April 30, after three weeks of monitoring during which Sims arrived between 8:00 and 8:45,[6] Sims was discharged.

## II.

■ To establish a prima facie case of retaliation, plaintiff must show first, that she engaged in participation[7] or opposition protected under Title VII which was known to defendants; second, that defendants took employment action which disadvantaged her; and third, that there was a causal connection between the protected participation and the disadvantaging employment action, that is, that a retaliatory motive played a part in the adverse employment action. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980).

■ The order of proof in a retaliation case follows the rule in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973).

"The plaintiff must first establish a prima facie case; the burden then shifts to the employer to articulate some legitimate non-discriminatory reason for the alleged acts of reprisal; and lastly, the burden then returns to the plaintiff, who is given an opportunity to demonstrate that the employer's reasons are a mere pretext for discrimination taken in retaliation for participation in protected activities."

*Grant*, 622 F.2d at 46.[8]

As to the first two elements, it is undisputed that Sims engaged in protected participation by filing a complaint with the EEOC. It is also undisputed that defendants knew of the complaint and that over the course of the next month defendants

---

**6.** The log sheets submitted as Exhibit 7 of the transcript of Noubar Mahdessian's deposition taken March 25, 1983 show that during this period Sims always arrived between 8:10 and 8:45, although she usually arrived between 8:10 and 8:20.

**7.** "Participation" refers to an employee's participation in the legal process in pursuing vindication of his or her rights under Title VII.

**8.** The order of proof for retaliation claims made under the Equal Pay Act are identical to those made under Title VII. *Pedreyra v. Cornell Prescription Pharmacies, Inc.*, 465 F.Supp. 936, 948 (D.Colo.1979).

took adverse employment action against plaintiff by changing her reporting time, singling her out for written warnings, singling her out for monitoring, and finally terminating her employment when she did not arrive exactly on time.

The facts pertaining to the third element of Sims' prima facie case are also undisputed: a retaliatory motive played a role in the adverse employment action. Defendants do not dispute that their actions toward plaintiff were motivated by her protected conduct. They contend, however, that plaintiff's EEOC complaint caused a change in their personal attitudes towards Sims, but did not cause a change in their attitudes as employers. They point to the language of the Title VII retaliation section which provides "[i]t shall be an unlawful employment practice for an *employer* to discriminate ...", 42 U.S.C. 2000e–3 (emphasis added), and argue that since they merely retracted the "friendly courtesies" that they, as friends, had previously extended to Sims (i.e., allowing her to come in later than 8:00 because they liked her and knew that she had an invalid mother to care for), defendants did not retaliate against her as employers by the actions they took.

Defendants misunderstand the proscriptions of Title VII. Distinctions between the Mahdessians as friends and as employers are of no moment here. Defendants, as employers, adversely altered the terms of plaintiff's employment because she filed a formal complaint against them with the EEOC. When an employer takes adverse

action against an employee at least in part because she engaged in protected activities, the employer violates Title VII. *Grant*, 622 F.2d at 46; *Kallir*, 401 F.Supp. at 71, 72 n. 17.[9]

Defendants contend that Sims was argumentative and disruptive and that this was the reason for their actions. For example, one alleged incident involved a fight in which Sims allegedly threatened a co-worker with a knife. Defendants do not deny, however, that Sims' allegedly disruptive behavior took place long before defendants' adverse action began, and that part of the disruption to which they refer in their papers was Sims' formal complaint to the EEOC.

Plaintiff correctly argues that defendants' open acknowledgement in the documents submitted to this court that they knowingly and deliberately changed the way they treated Sims because she filed an EEOC complaint is sufficient to support a finding of unlawful retaliation. *Grant*, 622 F.2d at 46; *Kallir*, 401 F.Supp. at 71. While Noubar Mahdessian states in his Affidavit in Opposition to Plaintiff's Motion for Summary Judgment[10] that his sole motive for discharging Sims was her tardiness and disruption of the business and not retaliation, N. Mahdessian Aff. at 4, he does not deny, and in fact admits that he adversely altered the terms of Sims' employment because she filed the EEOC complaint.

Mr. Mahdessian admitted his retaliatory motive several times in a deposition taken

---

**9.** In the setting of a constitutional challenge to employer actions (where the employee's actions were protected by the constitutional right to freedom of speech under the First and Fourteenth Amendments), the Supreme Court has held that the employer will not be liable if he can show by a preponderance of evidence that he would have acted in the same way toward his employee even in the absence of the protected conduct. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

In *McDonald v. Santa Fe Rail Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 the Supreme Court set out the

general Title VII standard for motivation when it held that the plaintiff need not show that he would have been rejected or discharged solely on the basis of his race. "No more is required to be shown than that race was a 'but for' cause."

The rule on retaliation in this Circuit is that if the employer's adverse actions were motivated at least in part because the employee engaged in protected activities, he violates Title VII. *Grant*, 622 F.2d at 46. *Cf. Kallir*, 401 F.Supp. at 71, 72 n. 17.

**10.** Hereinafter referred to as "N. Mahdessian Aff.".

March 25, 1983.[11] During that deposition, the following colloquy took place between Mr. Mahdessian and plaintiff's attorney, Mr. Taber.

"Q (Mr. Taber): If she had never filed that complaint with the EEOC, you wouldn't have forced her to come in and work at 8 o'clock, would you?

A (Mr. Mahdessian): I wouldn't have forced her, because she wouldn't have any complaint. And I was getting along with her just to make her happy, because I knew she had an invalid mother ... [B]ut she didn't respect my kindness, and she went and made those false accusations about me, and it made me very upset.

\* \* \* \* \* \*

Q If she had never made those accusations, she would never have been fired, would she?

**11.** Hereinafter referred to as "N. Mahdessian Dep.".

**12.** This was just one of several similar exchanges in which defendant admitted his retaliatory motive.

"Q: If she had been in at 8:15 or before 8:15 every day for the next couple of years, would that have been sufficient...?
A: I don't think so ... I wouldn't budge anymore, especially when she complained about it, and I had asked her in writing to show up at 8 o'clock....
Q: You said that it was—you weren't going to budge especially when she complained about it; is that right?
A: Yes.
Q: It was her complaint that was the difference; is that right?
A: That's right...."
N. Mahdessian Dep. at 123–124.
"Q: But Ms. Sims hadn't been fired for coming in as late as that individual had come in, had she?
A: No, because I was tolerant with her, but she didn't understand my kindness.
Q: And you were tolerant with her until the EEOC complaint was filed?
A: That's right. That's right."
N. Mahdessian Dep. at 131.
"Q: Yes, but you couldn't be a nice guy once the EEOC complaint was filed, because that was formal—
A: The whole thing was out of hand.... She put herself in writing, her complaint, instead of doing it verbally with me. Now it was my turn to put it in writing to prove to her that she was wrong.

A She might still have been working for me.
N. Mahdessian Dep. at 113–114.[12]

Moreover, in their statement pursuant to Rule 3(g) of the General Rules of this court, defendants concede that they changed their treatment of plaintiff because she filed the EEOC complaint.[13]

Since adverse action because of protected conduct is the legal standard for retaliation, and since there is no dispute as to the material facts, plaintiff has established a prima facie case as a matter of law.

 Plaintiff also argues that even if defendants had not admitted having a retaliatory motive, the actions defendants admittedly took are sufficient evidence to establish a retaliatory motive as a matter of law. Defendants do not dispute, and in fact admit, the following material facts:

Q: If she hadn't put it in writing, you wouldn't have had to have put it in writing, correct?
A: That's true."
N. Mahdessian Dep. at 292.

**13.** Paragraphs 7 and 8 of Defendants' 3(g) Statement provide as follows:
"7. Conceeds [sic] that the defendant NOUBAR MAHDESSIAN, who by this time was ill and unable to work at his trade and profession became upset by the unfounded charges and he *thereafter became more realistic in his treatment of the plaintiff.*
8. Denies the allegations contained in paragraph '8' and *conceeds* [sic] during the conversation that the plaintiff was told there was no discrimination whatsoever and that both pressers received the same amount of garments, but that she should come in early to watch the garments counted if she disbelieved the defendant. *Thereafter,* and to prevent recurring complaints that the store had to remain open late because the plaintiff came in late, and complaints that she was abusive to fellow employees, she was directed to come to work at the same time as the male presser, STEVEN GRAHAM, *she was to be treated like any other employee and was not to be given any special privileges.* Since MS. SIMS had to have someone take care of her mother in her absence, she merely had to have that person come in earlier and leave earlier, since the length of her employment did not change." (Emphasis added)

they required Sims to come in sharply at 8:00,[14] they knew that this requirement placed a significant burden on her;[15] the need for her early arrival had arisen long before the EEOC charge had been filed;[16] they imposed the 8:00 arrival time as a term of continued employment only on plaintiff and only after she filed her complaint with the EEOC;[17] they monitored only plaintiff's arrival times;[18] they delivered written warnings about timeliness only to plaintiff;[19] and threatened to terminate her employment if the warnings were not complied with;[20] they discharged her for failure to arrive exactly on time even though other employees who arrived with the approximate degree of lateness as plaintiff were not discharged;[21] and this series of events occurred directly following defendants' receipt of plaintiff's EEOC complaint.[22]

The existence of a retaliatory motive can be shown by indirect evidence as well as by direct evidence. *Grant,* 622 F.2d at 46. Plaintiff correctly argues that the closeness in time between defendants' receipt of the EEOC complaint and the initiation of the above-described undisputed adverse employment actions toward Sims supports an inference of retaliatory motive which is sufficient to establish a prima facie case, independent of the direct evidence of defendants' motive.[23]

Once the plaintiff's prima facie case has been established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason to rebut the inference of retaliation. *Grant,* 622 F.2d 43. *Cf. McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendants argue that Sims was discharged because she failed to meet the requirements placed on all other employees: to arrive by 8:00. This argument begs the question. As already established, defendants do not dispute that Sims was only required to arrive by 8:00 as a condition of employment because she filed a complaint with the EEOC. Even if such an argument were legitimate, it would be pretextual as a matter of law: defendants do not dispute that the 8:00 worktime would not have been enforced against Sims had she not filed a complaint with the EEOC.

Defendants have failed to substantiate the existence of a genuine dispute. *See Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983). The only inference which can reasonably be drawn from the undisputed facts is that defendants retaliated against plaintiff because she filed a complaint with the EEOC.[24] Since, as a

---

**14.** Defendants' 3(g) Statement at ¶¶ 8, 9, 10; N. Mahdessian Dep. at 77–78.

**15.** N. Mahdessian Dep. at 19, 40; Deposition of Ann Mahdessian taken January 17, 1983 at 196, 366–67 (hereinafter referred to as "A. Mahdessian Dep.").

**16.** N. Mahdessian Dep. at 22, 40, 113, 114; N. Mahdessian Aff. at 2–3; A. Mahdessian Dep. at 57.

**17.** N. Mahdessian Dep. at 22, 58, 236–37, 332.

**18.** N. Mahdessian Dep. at 56–57; A. Mahdessian Dep. at 407.

**19.** N. Mahdessian Dep. at 96; A. Mahdessian Dep. at 93.

**20.** Letters of April 19 and April 25, 1983 to Fannie Sims, submitted as Exhibits A and B accompanying Sims' Affidavit in Support of Plaintiff's Motion for Summary Judgment (hereinafter referred to as "Sims Aff.").

**21.** N. Mahdessian Dep. at 22, 58, 123, 130, 236–37, 279, 332; A. Mahdessian Dep. at 417.

**22.** N. Mahdessian Dep. at 77; N. Mahdessian Aff. at 2–4; Defendants' 3(g) Statement at ¶¶ 7, 8, 11; Plaintiff's Exhibits A and B accompanying the Sims Aff.

**23.** *Grant,* 622 F.2d at 46 (proof of causal connection can be established by showing that the protected activity is followed by discriminatory treatment); *Francoeur v. Carroon & Black Co.,* 552 F.Supp. 403, 410 (S.D.N.Y.1982) (a short interval between the time the defendant becomes aware of the plaintiff's protected activity and the initiation of adverse action toward him creates an inference of retaliation and serves to establish a prima facie case under Section 704(a)).

**24.** *Cf. First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, *rehearing denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968) (summa-

matter of law, plaintiff has established a prima facie case of retaliation and since defendants' professed legitimate non-discriminatory reasons for their treatment of plaintiff are pretextual as a matter of law, the motion for partial summary judgment is granted.

It is so ordered.

ry judgment granted where movant conclusively showed that the facts upon which opponent relied to support his allegations were not susceptible of the interpretation which he sought to give them); and *Empire Electronics Co. v. U.S.,* 311 F.2d 175, 180 (2d Cir.1962) (party moving for summary judgment is entitled to judgment as a matter of law where only one inference can reasonably be drawn from the undisputed evidentiary facts).