622 F.2d 43
 22 Fair Empl.Prac.Cas. 1596,
23 Empl. Prac. Dec. P 30,990
Roysworth D. GRANT and Willie C. Ellis on behalf of
themselves and all others similarly situated,
Plaintiffs-Appellees,
and
Louis Martinez, on behalf of himself and all others
similarly situated, Plaintiff-Intervenor-Appellee,
v.
BETHLEHEM STEEL CORPORATION; James Deavers, Richard
Driggers, and Thomas C. Connolly, Individually and
as agents of Bethlehem Steel
Corporation, Defendants,
and
the International Association of Bridge, Structural and
Ornamental Iron Workers, AFL-CIO; Local 40, Bridge,
Structural and Ornamental Iron Workers, AFL-CIO; Ray
Corbett, Ray Mullet, and Jerry Place, Individually and as
officers of Local 40, Bridge, Structural and Ornamental Iron
Workers, AFL-CIO; Richard C. Roudebush, Administrator,
Veterans Administration, Defendants-Appellants.
 No. 845, Docket 79-7842.
 United States Court of Appeals,
Second Circuit.
 Argued April 2, 1980.
Decided May 22, 1980.
 
 Lewis M. Steel, New York City (Eisner, Levy, Steel & Bellman, P.C., Richard A. Levy, New York City, of counsel) for plaintiffs-appellees.
 Michael D. Ratner, New York City, for plaintiff-intervenor-appellee.
 Stephen J. Smirti, Garden City, N. Y. (Colleran, O'Hara & Kennedy, P.C., Richard L. O'Hara, Robert A. Kennedy, Stanley Q. Casey, Garden City, N. Y. and Marian C. Rice, of counsel) for defendants-appellants.
 Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 The Union and three of its officers appeal from a judgment of the Southern District of New York, Whitman Knapp, Judge, finding that they discriminated against the appellees, three black ironworkers employed by Bethlehem Steel Corporation in the structural steel industry, in retaliation for their prosecution of charges against Bethlehem and the Union before the Equal Employment Opportunity Commission (EEOC) and in a Title VII class action. Judge Knapp also awarded back pay. We affirm.
 
 
 2
 The three appellees filed EEOC charges against Bethlehem and their Union, Local 40 of the Bridge, Structural and Ornamental Ironworkers, in 1975. In February, 1976 the plaintiffs filed a class action against the Company and the Union under Title VII and 42 U.S.C. § 1981 alleging, inter alia, that the Union discriminated against them in the manner in which it referred steel-working jobs. In July, 1977, the complaint was amended to allege that, because they had brought the EEOC charges and Title VII class action, the Union retaliated by referring them only to short-term work or to no work at all. Judge Knapp referred the plaintiffs' retaliation claim and motion for injunctive relief to Magistrate Sinclair, who conducted hearings and filed a report in July, 1977 recommending that no injunction be issued. Although he relied on the Magistrate's extensive findings of fact, Judge Knapp reversed the Magistrate's report in December, 1977, ruling that the Union had indeed retaliated against the plaintiffs because of their protected activity under Title VII. Later, in June, 1978 Judge Knapp also awarded plaintiffs back pay.[1] Since the record fully supports Judge Knapp's conclusions regarding the Union's retaliation against the plaintiffs and his calculation of the back pay award, we affirm largely on the basis of the district court's opinions. (The district court's opinion on the merits is reported at 16 Empl. Prac. Dec. P 8261 (1977).)
 
 
 3
 The facts of this case are thoroughly set-out in the Magistrate's report and in Judge Knapp's initial opinion, and need only be summarized here. In 1972, as a result of a Title VII suit brought by the Government, the late Murray I. Gurfein, then a district judge, issued an order specifying the manner in which the Union is to run its hiring hall. United States v. Local 638, et al., 347 F.Supp. 169 (S.D.N.Y., 1972). The order specified that a Union member seeking employment must sign a register each day indicating the work he is qualified to do and the number of consecutive days he has appeared without receiving employment; the Union must then refer persons for work based only on their job experience, qualifications, and time in the hall, and duly record whatever referrals are made. The hiring hall was run by two business agents of the Union: Gerald Place, the President of the Local, and James Mullett, its recording Secretary. They were responsible for selecting persons for referral and keeping records. The evidence shows that Place and Mullett violated the terms of Judge Gurfein's 1972 order by neglecting to keep proper records and by failing to establish a uniform system for determining time in the hall. An uneven pattern of referrals developed because Place and Mullett relied on their own personal observations and other subjective criteria. It was not uncommon, for instance, for workers with little in-hall time to receive employment referrals while others with more in-hall time received none.
 
 
 4
 Plaintiffs Roysworth Grant filed EEOC charges against the Union in June and October of 1975. He received a one-month job in August, 1975 and an eight-month job on November 5, 1975. The Union received a notice of his EEOC charges sometime between November 5 and November 21, 1975. From July, 1976 (when Grant returned from the eight-month job) and March, 1977 (when the instant retaliation suit hearings were about to be heard), Grant appeared at the Union hall 136 days and received only three short-term referrals. Grant refused these three one-day jobs out of fear they would return his in-hall time to zero and thus negate his chances for a long-term job. Many men referred out of the hall during that period had less time than Grant.
 
 
 5
 Plaintiff Willie Ellis filed his EEOC charges in October, 1975, and the Union had notice of them by November 21, 1975. He received four job referrals between November 17 and December 4, 1975, and then only attended the hall sporadically between December, 1975 and July, 1976. He resumed regular attendance on August 3, 1976, and refused a job of indeterminate duration on August 24, 1976. From late August, 1976 to April, 1977, Ellis attended the hall every day without receiving one referral. No other worker had more hall time.
 
 
 6
 Plaintiff Louis Martinez filed his EEOC charges on November 26, 1975, and the Union received notice of them by early December, 1975. From then until January 28, 1976 he appeared 34 times and received no referral while others with less time received referrals. Between January and March, 1976, he received six referrals amounting to 13 days' work. Because he felt singled out for short-term work, Martinez appeared in the hall only once between April and December, 1976. Between December 13, 1976 and March 18, 1977, he signed in approximately 70 times without receiving one referral. During that period, 85 referrals went to workers with less time than he.
 
 
 7
 The legal standards applicable to a Title VII retaliation suit are not in dispute. Both sides agree that in order to establish such a claim, the plaintiff must show: first, protected participation or opposition under Title VII known by the alleged retaliator; second, an employment action or actions disadvantaging persons engaged in protected activities; and third, a causal connection between the first two elements, that is, a retaliatory motive playing a part in the adverse employment actions. EEOC v. Locals 14 and 15, Intern. U. of Oper. Eng., 438 F.Supp. 876, 881 (S.D.N.Y., 1977), and Hochstadt v. Worcester Foundation, 425 F.Supp. 318, 324 (D.Mass.), (aff'd, 545 F.2d 222 (1st Cir. 1976)). It is well established that the order of proof in a retaliation case follows the rule in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973): the plaintiff must first establish a prima facie case; the burden then shifts to the employer to articulate some legitimate nondiscriminatory reason for the alleged acts of reprisal; and lastly, the burden returns to the plaintiff, who is given an opportunity to demonstrate that the employer's reasons are a mere pretext for discrimination taken in retaliation for participation in protected activities.
 
 
 8
 We agree with Judge Knapp that the plaintiff established a prima facie case of retaliation. The Union conceded that the plaintiffs engaged in protected activity under Title VII, and it can hardly be denied that the plaintiffs were disadvantaged by the Union's manner of referring jobs. As for the third element, courts have recognized that proof of causal connection can be established indirectly by showing that protected activity is followed by discriminatory treatment. Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir. 1976), and Hochstadt v. Worcester Foundation, supra.
 
 
 9
 Given that the plaintiffs have established a prima facie case, the burden shifted to the Union to show some legitimate non-discriminatory reason for its actions, and this the Union entirely failed to do. As for plaintiff Grant, Judge Knapp properly found that the Union's "welder referral only" and "back to day one for refusals" defenses were transparent pretexts for the Union's retaliation. Mullett's explanation that he thought Grant could only be considered for welder jobs is contradicted by his own deposition, and Mullett testified that the "back to day one for refusals" policy was only applied to the plaintiffs. As for Ellis, Judge Knapp properly found the Union's assumption that he would only accept a supervisory position was unsupported by the record and was merely an excuse for retaliation. The record shows that Ellis' counsel alerted the Union to his client's desire to accept any position in September and November, 1976. As for Martinez, the Union's only explanation for his long period of no referrals was "inadvertence and oversight" clearly an unacceptable reason. Finally, Judge Knapp also properly rejected the Union's explanation that the plaintiffs' lack of referrals was merely symptomatic of an industry-wide decrease in work, concluding that "Although the amount of construction work may indeed have declined in the relevant period, we find that any ensuing hardships were not shared equally by the entire Union membership, but rather fell disproportionately on plaintiffs". In short, the Union failed to articulate any legitimate non-discriminatory reasons for its actions, and the reasons it did advance were mere pretexts for retaliatory discrimination.
 
 
 10
 Judge Knapp's formula for calculating the plaintiffs' award of back pay namely, the awarding of back pay for every day they attended the hall without receiving a work referral, minus the amount of any unemployment insurance or supplemental income they received during those periods is appropriate and well within the guidelines of Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Unrealistic exactitude is not required in determining back pay, EEOC v. Enterprise Ass'n. Steamfitters, 542 F.2d 579, 587 (2d Cir. 1976), cert. denied, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). Judge Knapp's formula is fair and reasonable.
 
 
 11
 We affirm the district court's findings that the plaintiffs established a retaliation claim under Title VII, and the formula for calculating the award of back pay.
 
 
 
 [1]
 The district court denied damages under § 1981, and no cross-appeal was filed