Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor

v.

COMMERCIAL SEWING, INC.

Civ. No. H–81–397.

United States District Court, D. Connecticut.

Oct. 5, 1982.

549

Albert Ross, Regional Sol., David L. Baskin, U.S. Dept. of Labor, Boston, Mass., for plaintiff.

Thomas F. McDermott, Jr., Feeley, Nichols & McDermott, Waterbury, Conn., for defendant.

## MEMORANDUM OF DECISION

BLUMENFELD, Senior District Judge.

This is a suit brought by the Secretary of Labor on behalf of Nancy Perez, who was employed by the defendant, Commercial Sewing, Inc. (Commercial Sewing), alleging that Perez was unlawfully discharged in retaliation for her complaints about safety and health conditions at her place of employment in violation of section 11(c) of the

Occupational Safety and Health Act (OSHA), 29 U.S.C. § 660(c). The plaintiff seeks an award of back pay and an injunction (1) enjoining the defendant from violating section 11(c) of OSHA; (2) enjoining the defendant and its agents, Samuel and Michael Mazzarelli, from making any attempts to hinder Nancy Perez from obtaining other employment; (3) requiring the defendant to post a notice at its employee time clock for 60 days; and (4) requiring the defendant to purge Nancy Perez's records of all references to her illegal firing. The case was tried to the court.

### Facts

Commercial Sewing is a small company, jointly owned by Samuel and Michael Mazzarelli, which manufactures sewing products, particularly recreational products. Nancy Perez began working for Commercial Sewing on February 13, 1980 as a sewer in the production department. On March 1, 1980 she informed Samuel Mazzarelli, the president as well as co-owner, that she intended to quit. He asked her to stay on and offered her a part-time job in the research and development department which he heads. She worked in research and development until her discharge on October 31, 1980.

The parties disagree as to the precise terms of her employment in the research and development department. When she first began work in that department she came in approximately three days a week because she also had a part-time job in a restaurant. Samuel Mazzarelli testified that because of her part-time employment elsewhere he initially accepted her on a part-time basis but expected her to become a full-time employee at a later date. She began working approximately five days a week on a somewhat regular basis in June 1980. The defendant's position is that for some time prior to her discharge Perez was a full-time employee expected to work from 8:00 a.m. until 3:00 p.m. five days a week, and that her discharge was the result of her undependability and absenteeism. Perez insists that she was employed on a part-time basis and was not required to work regular hours. She testified that she always let the company know when she was not coming to work or when she was leaving early. She also stressed that she worked extra hours when needed in order to complete rush jobs. She was an hourly employee who was paid only for hours actually worked. Her time cards reveal that during her tenure at Commercial Sewing she worked 35 hours or more eight weeks out of a total of 37 weeks, that her hours fluctuated widely, and that her average work week was 28 hours. Plaintiff's Exhibit 1.

Perez's job in research and development was crucial to the operation of the entire company. She produced sample products which were needed by the sales, shipping and production departments. Samuel Mazzarelli described the quality of her work as excellent and stated that when present she worked hard. Her lack of dependability and absenteeism, however, were adversely affecting the company, according to the testimony of three top executives. Mazzarelli conceded, however, that at the time of her discharge no steps had been taken to obtain a replacement for her.

In May of 1980 Perez became pregnant and informed Samuel Mazzarelli, her supervisor, of this fact. At a later date she told him that she would stop work on January 15, 1981 due to the fact that her baby's due date was estimated to be February 10, 1981. They discussed the question of her return to work after the baby's birth. Perez's understanding was that she probably would come back to work in some capacity although the details had not yet been worked out. The fact that this was also Mazzarelli's understanding is confirmed by his reference, on her work evaluation report dated October 15, 1980, to the possibility of her return following her pregnancy. Plaintiff's Exhibit 2.

On or before October 30, 1980, Commercial Sewing began using a commercial glue for a particular project. The odor of the glue was very strong and bothered a number of employees. Nancy Perez was ap-

proximately six months pregnant at the time and experienced headaches and nausea because of the glue's strong smell. On October 30, 1980, she asked Michael Mazzarelli if he knew the contents of the glue and, according to her testimony, received his permission to leave early because the glue's fumes had given her a headache. She complained to Joanne Bielawski, the purchasing agent, about the glue and asked her to find out what its contents were. She then left for the day.

When she returned to work the next morning at 8:00 a.m. Samuel Mazzarelli, who had not been at work the previous day, told her that he had heard that she had left early the day before. She told him Michael had given permission and asked him about the contents of the glue. Samuel Mazzarelli could not recall whether or not Nancy Perez had told him at this time that the odor of the glue was the reason for her early departure the previous day. Perez testified that they had discussed the matter of the glue during the course of this early morning conversation. The glue was clearly in the forefront of her mind that morning. She subsequently inspected the glue containers in an attempt to determine the glue's ingredients and again asked Joanne Bielawski whether she had ascertained its contents. I find, therefore, that Perez did express her concerns about the glue to Samuel Mazzarelli during the course of their discussion which took place prior to the time Mazzarelli discharged her and that Mazzarelli, therefore, knew of her safety and health complaints about the glue prior to her discharge.

At some point that morning Samuel Mazzarelli told the bookkeeper, Mary Audet, to make out a pink slip terminating Nancy Perez for absenteeism. He also told Joanne Bielawski to stop attempting to ascertain the contents of the glue because Perez had been terminated. Later that day, at about 2:15 p.m., he told Perez that she was fired for absenteeism and that she was not eligible for unemployment insurance benefits.[1]

Within a few days Commercial Sewing stopped using that particular glue and later finished the project with another glue which did not have an offensive odor.

On November 3, 1980, Nancy Perez made a complaint to the Occupational Safety and Health Administration (OSHA) charging that she had been fired in retaliation for her complaints about possible health and safety problems associated with the use of the glue. On December 8, 1980, Samuel Mazzarelli posted a notice on the premises of Commercial Sewing informing all employees that:

Because of a written complaint made by Mrs. Nancy Perez, Osha conducted an inspection of CSI for possible violation of safety laws.

As a result of the investigation the below listed citations and fines were made against us.

We are confering [sic] with Osha and contesting most of these citations.

We will keep you informed as to our progress in changing these ridiculous fines and citations.

Plaintiff's Exhibit 7.

OSHA subsequently investigated Perez's complaint that she had been discharged because of her safety and health complaints. Vincent Antelmi, an investigator employed by OSHA to investigate allegations of discrimination, interviewed Samuel Mazzarelli. Mazzarelli insisted that he discharged Perez for absenteeism but admitted that he had been upset about Perez and the OSHA complaints. The defendant has also admitted that Samuel Mazzarelli told Perez's sister that he would make it hard for Perez to get another job. Defendant's Response to Plaintiff's First Request for Admissions, Request # 15.

After her discharge, Nancy Perez looked for other work until the birth of her baby on February 11, 1981. A few days after her son was born she received a letter from

---

1. Ms. Perez was subsequently awarded unemployment insurance benefits after a hearing at which the defendant contested her eligibility.

Samuel Mazzarelli dated February 12, 1981 offering her her "former job . . . provided you are available for full time work of 40 hours per week." Plaintiff's Exhibit 3.[2] Perez felt that this offer was not made in good faith because (1) it was made a day after the birth of her child when she was clearly not available for full time employment; (2) it required her to commit herself to a full 40-hour week which was not the basis on which she was previously employed by the defendant; and (3) it appeared to be motivated solely by a desire to cut off the defendant's potential liability for back pay. After conferring with OSHA, Perez responded by a letter dated March 3, 1981 and informed Samuel Mazzarelli that she would let him know whether she would accept his offer at the conclusion of the six-week rest period to which she was entitled under state law after the birth of her child. In a letter dated July 1, 1981 and June 26, 1981,[3] Samuel Mazzarelli requested "a written response to my offer for full time employment doing your former job at your former pay with your former benefits included." Plaintiff's Exhibit 5. Perez responded, in a letter dated July 9, 1981, by rejecting this offer. Perez sought other employment until July 1981 when she decided to remain at home with her baby.

This case presents the court with primarily two issues. First, did Samuel Mazzarelli fire Nancy Perez in retaliation for her safety and health complaints in violation of section 11(c) of the Occupational Safety and Health Act; second, if so, did the February 12, 1981 offer of reinstatement cut off the defendant's liability for back pay under section 11(c)(2)?

2. The full text of Samuel Mazzarelli's February 12, 1981 letter to Nancy Perez is as follows:

In as much as your termination of October 31, 1980 was specifically due to your inability to be available for full time employment, and whereas we have the fullest respect for your capabilities in your former capacity in the "Research and Development" department; and whereby we have been notified that you are now *available* for full time employment, we would like to make available to you, starting immediately, your former job.

### The Motive of the Discharge

Section 11(c)(1) of the Occupational Safety and Health Act provides, in relevant part, that

[n]o person shall discharge . . . any employee because such employee has filed any complaint . . . under or related to this Act . . . .

29 U.S.C. § 660(c)(1). This court has held that a complaint made to an employer about safety and health problems constitutes protected activity under section 11(c)(1). Ruling on Defendant's Motion for Summary Judgment, *Donovan v. Commercial Sewing, Inc.*, No. Civ. H–81–397 (D.Conn., filed January 27, 1982). The issue that must now be resolved, therefore, is whether Nancy Perez was discharged because she engaged in protected activity or whether she was discharged because of a record of absenteeism and undependability as the defendant claims.

The Department of Labor has issued regulations defining precisely when an employer's actions constitute retaliation prohibited by section 11(c)(1):

The proscriptions of section 11(c) apply when the adverse action occurs because the employee has engaged in protected activities. An employee's engagement in activities protected by the Act does not automatically render him immune from discharge or discipline for legitimate reasons, or from adverse action dictated by non-prohibited considerations.

(b) At the same time, to establish a violation of section 11(c), the employee's engagement in protected activity need not be the sole consideration behind discharge or other adverse action. If protected ac-

Your starting pay will be retained at $5.00 per hour provided you are available for full time work of 40 hours per week.
We welcome your immediate response and hope for your quick return.
Plaintiff's Exhibit 3.

3. The first page of this letter is dated July 1, 1981 and the second page is dated June 26, 1981.

tivity was a substantial reason for the action, or if the discharge . . . would not have taken place "but for" engagement in protected activity, section 11(c) has been violated.

29 C.F.R. § 1977.6(a), (b) (citations omitted). The question I must decide, therefore, is whether Samuel Mazzarelli would have fired Nancy Perez on October 31, 1980 if she had not made complaints and inquiries about potential adverse health consequences from the use of the glue. Even if Samuel Mazzarelli's concerns about Perez's lack of dependability and record of absenteeism were otherwise justifiable, if they were not the actual motivating factor which caused him to fire her on that day her discharge in retaliation for protected activity exposes his company to liability under OSHA. The question of his actual motivation is a question of fact which I have resolved after considering all the evidence presented by both sides.

The record contains substantial evidence, both direct and indirect, that Nancy Perez's discharge was the result of her safety and health complaints and would not have occurred "but for" her complaints.

First, there is strong circumstantial evidence that the defendant's proffered explanation for the discharge is a pretext. Nancy Perez was purportedly fired because of her record of absenteeism and undependability. Her time cards reveal, however, that she had never worked a steady 35- or 40-hour week since she began at Commercial Sewing. Whatever the merits of the complaints about her absenteeism, the problem existed for a long time prior to October 31, 1980. The defendant's witnesses all agree that Perez's lack of dependability had been troublesome for many months. Yet, she was fired that day after she began making complaints and inquiries about the health implications of the glue. The defendant would apparently have the court believe that the problem of her absenteeism had been building for some time, that it finally became insufferable and that she was fired on October 31, 1980 because her early departure the previous day was, in

effect, the "straw that broke the camel's back." I am not inclined to credit this explanation. Several of the defendant's witnesses testified that Nancy Perez's job was of critical importance to the operation of the entire company. Nevertheless, no steps were taken to obtain a replacement for her prior to her discharge. She had left early many other days and had not been discharged, but on this occasion, when she left early because of the glue, she was fired. I find, on the basis of this circumstantial evidence, that she would not have been discharged if she had not complained about the odor of the glue and taken steps to ascertain whether it contained any toxic ingredients.

In addition, there is direct and uncontested evidence that Samuel Mazzarelli expressed antagonism towards Perez on more than one occasion. He posted a notice which blamed Perez for the OSHA citation incurred by Commercial Sewing after her discrimination complaint with the agency. The defendant concedes that Samuel Mazzarelli made malicious comments about Perez to the effect that he would make it difficult for her to find another job. On the basis of this evidence, I find that Samuel Mazzarelli felt malice towards Nancy Perez because of her complaint to OSHA. The fact that he felt such antagonism shortly after her discharge confirms my conclusion that she would not have been discharged on October 31, 1980 "but for" her complaints and inquiries about health and safety conditions. I conclude, therefore, that the defendant has violated section 11(c) of OSHA and is liable, therefore, for back pay as well as other appropriate relief. 29 U.S.C. § 660(c)(2).

### The Offer of Reinstatement

Having found that the defendant violated section 11(c) the court is confronted with the task of delineating the proper scope of the back pay remedy. By letter dated February 12, 1981, Samuel Mazzarelli offered to reinstate Nancy Perez to her former job "starting immediately . . . provided you are available for full time work of 40 hours per

week." Plaintiff's Exhibit 3. The defendant takes the position that Nancy Perez's failure to accept this offer terminates its liability for back pay as of the date of the offer. The Secretary of Labor seeks an award of back pay covering the entire period from her discharge until she ceased looking for work in July 1981 with the exception of a ten-week period surrounding her child's birth when she was not seeking employment.

Section 11(c)(2) of OSHA provides that In any ... action [brought by the Secretary of Labor under § 11(c)] the United States district courts shall have jurisdiction for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including re-hiring or *reinstatement* of the employee *to* his *former position with back pay.*

29 U.S.C. § 660(c)(2) (emphasis added). This provision is similar to a comparable provision of Title VII of the Civil Rights Act of 1964 § 706(g), 42 U.S.C. § 2000e–5(g). Title VII case law can provide guidance, therefore, to aid the court in determining the proper scope of a back pay remedy under section 11(c) of OSHA. *Cf. Ford Motor Company v. Equal Employment Opportunity Commission,* —— U.S. ——, —— n. 8, 102 S.Ct. 3057, 3062 n. 8, 73 L.Ed.2d 721 (1982) (principles developed under the NLRA guide the courts in tailoring remedies under Title VII).

■ The Supreme Court has held that Title VII expresses a presumption in favor of back pay awards:

[G]iven a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). I conclude that section 11(c) of OSHA should also be construed to create a presumption favoring back pay awards since the statute specifically mentions the back pay remedy. In fact, OSHA does not incorporate a statutory duty to mitigate damages as does Title VII. *See* § 706(g) of Title VII, 42 U.S.C. § 2000e–5(g) ("amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable"). Although it is appropriate to apply such a duty under OSHA as well as Title VII, this difference between the two statutes suggests that, if any distinction is drawn between back pay awards made under Title VII and under OSHA, a stronger presumption in favor of comprehensive back pay remedies should govern under OSHA.

■ Ordinarily, an employee's unreasonable rejection of a bona fide offer of reinstatement will stop an employer's back pay liability from continuing to accrue. *E.g. Coates v. National Cash Register Co.,* 433 F.Supp. 655, 662–63 (W.D.Va.1977) (Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*). The district court has the responsibility, however, "to decide each back pay controversy in a way calculated to achieve a just and equitable result in the circumstances of the case before it." *Jurinko v. Edwin L. Wiegand Co.,* 528 F.2d 1214, 1216 (3d Cir.1975) (Title VII). Failure to accept an offer of reinstatement will not automatically terminate the employer's back pay liability in every case.

In determining whether the right to relief extends beyond the date of an offer of reinstatement, the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal.

*Claiborne v. Illinois Central Railroad,* 583 F.2d 143, 153 (5th Cir.1978), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979) (Title VII).

■ In this case I conclude that the back pay remedy should not be limited to the period prior to the defendant's reinstatement offer for two reasons. First, I find that the terms of Nancy Perez's employment prior to her discharge did not require her to work full-time and, therefore, she

was not offered a job comparable to her former position. Second, I find that the February reinstatement offer was not made in good faith.

Ms. Perez's time cards clearly reveal that she never worked either a 35- or a 40-hour week. Despite Samuel Mazzarelli's testimony that he expected her to become a full-time employee, he conceded that she was hired on a part-time basis when she transferred into the research and development department. I find, therefore, that since her transfer from the production department to the research and development department Perez was employed on less than a full-time basis. Offers of reinstatement are effective to terminate an employer's back pay liability only where the discharged employee is offered the same or a comparable job under the same conditions of employment. *See, e.g.,* cases cited in *Ford Motor Company v. Equal Employment Opportunity Commission,* —— U.S. at —— n. 16, 102 S.Ct. at 3065 n. 16.[4] An offer of a full-time job is not comparable to the part-time employment Ms. Perez lost when she was unlawfully discharged. On this basis alone I conclude that the February reinstatement offer was not effective to terminate the defendant's back pay liability.

In addition, however, the evidence leads me to find that Samuel Mazzarelli did not tender this reinstatement offer in good faith. Mazzarelli knew that Perez was expecting a baby on February 10, 1981, two days before the date of his letter offering to reinstate her to her former job provided she was available immediately for full-time work of 40 hours a week. He was aware that she did not want to work on a full-time basis, especially after the birth of her child.

The manner in which he drafted the February 12 letter further demonstrates that Mazzarelli's letter was motivated by his desire to avoid any liability which might result from the pending OSHA investigation rather than by a sincere desire to reinstate Perez.[5] I find, therefore, that the February reinstatement offer was not made in good faith and cannot be used to cut off the defendant's liability.

*Proper Amount of the Back Pay Award*

■ There remains the question of the exact amount of the back pay award to which Nancy Perez is entitled. The Secretary of Labor claims that Perez is due $3,640 plus interest at 8% computed for one year from March 27, 1981, the approximate mid-point in the violation period, for a total of $3,931. The plaintiff also contends that no deduction should be made for the $480 in net unemployment compensation benefits Perez received.

I find that $3,640 represents an accurate estimate of the amount Ms. Perez would have earned had she remained in the defendant's employ until July 7, 1981, the day on which she decided to leave the work force. Assuming that Perez would continue to work an average of 28 hours per week and be paid $5 per hour, the rate mentioned in Samuel Mazzarelli's letter of February 12, 1981, she would have earned $140 per week. She testified that she had planned to work until January 15, 1981 and then recommence work six weeks after her baby's birth. She would have worked, therefore, a total of 26 weeks from October 31, 1980 until July 7, 1981, leaving out the ten-week period when she did not seek em-

---

4. In *Ford Motor Company v. Equal Employment Opportunity Commission,* —— U.S. ——, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the Supreme Court held that "the ongoing accrual of back pay liability is tolled when a Title VII claimant rejects the job he originally sought" because the employer did not offer him seniority retroactive to the date of the discriminatory employment practice. *Id.* at ——, 102 S.Ct. at 3069. The Court's opinion makes clear, however, that its holding in no way affects the well established principle that the job offered must

be, at the very least, "substantially equivalent to the one [the employee] was denied." *Id.* at ——, 102 S.Ct. at 3066. The Court specifically cited a number of cases which held that reinstatement offers are ineffective where an employee is offered a different job or the same job under different conditions of employment, *id.* at —— n. 16, 102 S.Ct. at 3065 n. 16, thus making explicit the fact that its holding does not change this generally recognized rule.

5. *See* note 2 *supra.*

ployment because of the baby's birth. Twenty-six weeks at $140 per week totals $3,640.

The plaintiff's claim for prejudgment interest of 8% computed from March 29, 1981 seems eminently reasonable and fair.

Whether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district court. *Lodges 743 and 1746, International Association of Machinists and Aerospace Workers v. United Aircraft Corp.,* 534 F.2d 422, 446 (2d Cir.1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976) (action under § 301 of the L.M.R.A., 29 U.S.C. § 185). It has been the practice in this district to allow prejudgment interest to most plaintiffs prevailing under Title VII. *E.g. Johnson v. University of Bridgeport,* 21 Fair Employment Practices Cases 675, 677 (D.Conn.1979). A similar result will serve the compensatory purposes of section 11(c) of OSHA. I, therefore, award prejudgment interest at a rate of 8% computed from March 27, 1981. The gross amount of the back pay award with interest totals $3,931.

I am persuaded, however, that it will serve neither the interests of justice nor the compensatory purpose of back pay awards if I fail to deduct from this amount the $480 in net unemployment benefits which Ms. Perez received after her discharge from Commercial Sewing. This conclusion is supported by the general practice in Title VII cases to deduct the amount of such benefits from back pay awards. *See, e.g., Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 47 (2d Cir.1980); *Johnson v. University of Bridgeport,* 21 Fair Employment Practices Cases at 676–77. The net award, thus, equals $3,451.

### Requested Injunctive Relief

[7] The Secretary of Labor also requests that this court enjoin the defendant from violating section 11(c) of OSHA, enjoin the defendant and its agents, Samuel and Michael Mazzarelli, from making any attempts to hinder Nancy Perez from finding another job, require the defendant to post a notice at its employee time clock for a period of 60 days (see Appendix A for text of notice), and to purge Nancy Perez's records of all references to her illegal firing for absenteeism.

In view of my findings that the defendant did violate the Act by discharging Perez in retaliation for her health and safety complaints, I conclude that the requested injunctive relief is appropriate and will serve the purpose of preventing future violations of section 11(c) as well as informing current employees of their rights under this section. I, therefore, order the following injunctive relief in addition to the back pay award:

The defendant, its officers, agents, servants, employees, and all persons acting or claiming to act in its behalf and interest, are hereby enjoined from violating section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c). The defendant and its agents, Samuel and Michael Mazzarelli, are also enjoined from making any attempts to hinder Nancy Perez from finding another job. The defendant is required to post at its employee time clock for a period of 60 days the notice which is attached hereto as Appendix A. In addition, the defendant is required to purge Nancy Perez's records of all reference to her illegal discharge on October 31, 1980 for absenteeism.

SO ORDERED.

### APPENDIX A

### NOTICE

### TO EMPLOYEES OF

### COMMERCIAL SEWING, INC.

1. Under Section 11(c) and 29 C.F.R. Part 1977 an employer may not fire or discriminate against or harass an employee for complaining to the State, to the employer and/or to OSHA about safety and health hazards.

2. On October 31, 1980 Commercial fired Mrs. Nancy Perez because she complained to Samuel and Michael Mazzarelli about

glue fumes and attempted to find out the glue's contents.

3. The United States District Court for the District of Connecticut has ordered Commercial to pay Mrs. Perez $3,451 in compensation for lost wages, and Commercial has paid her this amount.

4. The Court has enjoined Commercial and Samuel and Michael Mazzarelli from attempting to hinder Mrs. Perez from finding another job.

5. Any employee who believes that there are any safety and health hazards at our facility may notify Commercial and/or may request an OSHA inspection by calling OSHA at (203) 244–2294. Commercial cannot discharge, or discriminate against, or harass any employee for doing so.