Allen W. JOHNSON, Plaintiff,

v.

HOWARD UNIVERSITY, et al., Defendants.

Civ. A. No. 84–3828.

United States District Court, District of Columbia.

July 2, 1986.

Arlene Kafker, Washington, D.C., for plaintiff.

Leland Ware, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

Mr. Allen W. Johnson, a male, brings this action against his former employer Howard University and two University officials, Dean Vincent Johns and Ms. Roberta McLeod. Plaintiff charges that when he was terminated in June 1983, his rights conferred under Title VII of the Civil Rights Act of 1964 were violated. In late December 1982, Mr. Johnson filed an official complaint with the Equal Employment Opportunity Commission ("EEOC") charging the University with sexual discrimination. He amended that claim and in February 1983 filed a charge of retaliation arising out of a five-day suspension levied against him in January 1983. He claims that the suspension was a retaliatory measure because he filed an EEOC discrimination complaint.

The trial of this action was heard by the Court without a jury. The legal memoranda of counsel, the testimony of the several witnesses for the parties, the exhibits, and the argument of counsel have all been fully considered. The Court determines that the plaintiff's Title VII rights were not violated, that he was not the victim of sexual discrimination or a retaliatory discharge, and, therefore, he is not entitled to relief. Indeed, the charges of discrimination brought by the plaintiff are devoid of merit and cause the Court to question his counsel's familiarity and compliance with the letter and spirit of the provisions of Rule 11 Fed.R.Civ.P., which provide in part:

the signature of an attorney [on a pleading] ... constitutes a certificate ... that [counsel] has read the pleading ...; that to the best of [counsel's] knowledge, information, and belief formed after reasonable inquiry it is well founded in fact and is warranted by existing law....

As required by Rule 52 of the Fed.R. Civ.P., the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The Armour Blackburn Center is a multipurpose Howard University facility containing several well-appointed meeting, assembly and banquet rooms where various student and Unversity-sponsored activities are scheduled. In February 1980, plaintiff Allen W. Johnson was appointed to serve as night and weekend manager at the Center. Shortly after Johnson's employment, Ms. Roberta McLeod was appointed as Director of the Center and plaintiff reported directly to her as his supervisor.

From the outset of his employment, plaintiff began to have conflicts and experience strained relationships with his supervisor. The testimony showed that Johnson's overall performance fell short of what was expected. As a consequence, on January 12, 1981, Ms. McLeod recommended the denial of plaintiff's regularly-scheduled pay increase. The reasons for her recommendation included general dissatisfaction with plaintiff's handling of job duties and poor interpersonal relationships with his colleagues and supervisors. (D. Ex.–2.)

Plaintiff received the step increase, despite Ms. McLeod's recommendation, because she had not submitted the recommendation to the University's Personnel Office within the required time period. In his testimony concerning this incident, Johnson implied and claimed that McLeod's actions were based on the merits of his performance. Such was not the case. His wage increase was granted because of a mixup in procedures. This conclusion was amply supported by the testimony of Ms. McLeod and Arthur Newman, the Director of the University's Personnel Office.

Several weeks later, on February 24, 1981, Ms. McLeod issued plaintiff a formal notice of unsatisfactory work performance. The notice stated that plaintiff had exhibited deficiencies in the following categories: failure to use sound judgment, failure to perform officially directed duties and responsibilities, and insubordination. (D. Ex.–3.) McLeod testified that following the notice, while there was some improvement in plaintiff's performance, he still remained deficient in various areas. Hence, on April 28, 1981, there was cause to issue another memorandum regarding his work performance. The memorandum noted some improvement in performance and attitude, but again pointed to specific problem areas. These included responsibility for checking the Blackburn Center on a daily basis; evening and weekend program scheduling; responsibility for making building rounds to assure that all areas and equipment were secured; and inadequacies in the required daily report. (D. Ex.–4.)

On May 15, 1981, plaintiff submitted a formal complaint to Arthur Newman, Director of Personnel, Howard University. In this memorandum, he accused McLeod of back-dating personnel data, falsification and fabrication of information, misuse of authority, favoritism and discrimination. (D. Ex.–19.) The credible testimony and evidence show that this was a reckless charge. The University Personnel Director testified that he conducted an investigation and issued a formal decision on June 10, 1981 concluding that plaintiff's charges were unfounded. (D. Ex.–20.) Newman was closely examined on this matter and the Court finds that his conclusion was reasonable and well-founded.

On January 10, 1982, Ms. McLeod issued a memorandum to plaintiff which contained his second annual performance evaluation. (D. Ex.–9.) The memorandum indicated that plaintiff's performance continued to be deficient. She also stated that plaintiff's carelessness and neglect of his duties had caused delays in the operation of the Cen-

ter and that she intended to recommend the denial of his regularly scheduled step increase. Plaintiff then addressed a memorandum to Dean Johns appealing the recommendation of the denial of the step increase and requesting a meeting on the matter. (D. Ex.–25.) Dean Johns responded immediately, stating that he was affirming Ms. McLeod's recommendation to deny the step increase. (D. Ex.–26.)

On September 30, 1982, Ms. McLeod issued another memorandum to plaintiff regarding his job performance. This memorandum stated that plaintiff's performance continued to be unsatisfactory—noting his absenteeism, unprofessionalism and failure to complete leave slips. (D. Ex.–12).

In early December 1982, Mr. Terry Samuels, Assistant Director for Programs, issued a memorandum to Ms. McLeod which discussed an incident of insubordination involving the plaintiff. (D. Ex.–13.) Samuels stated that he had directed plaintiff to allow a typing room to remain open until 10 p.m. and that plaintiff had refused to do so. *Id.* This incident prompted Ms. McLeod to recommend a five-day suspension on December 6, 1982. (D. Ex.–14, pp. 1, 2.) That recommendation was subsequently approved by the University on December 8, 1982. On December 10, 1982, plaintiff was notified of the suspension. (D. Ex.–15.)

Father Nathanial Porter, plaintiff's co-worker who was similarly employed as a night and weekend manager at the Center, testified that a meeting he was having with Ms. McLeod was interrupted when Johnson appeared at the door of her office. Father Porter, called by Johnson as his first witness, testified that a loud and boisterous discussion ensued and that plaintiff initiated and provoked an extremely unpleasant episode. Ms. McLeod testified that on this occasion, plaintiff demanded that she "take back" the December 10th suspension. Plaintiff admitted that the episode occurred but did not consider his behavior at the time as improper or inappropriate. Several days later on December 28, 1982, plaintiff filed a claim of sex discrimination against Howard University with the Equal Employment Opportunity Commission. Specifically, he claimed that McLeod discriminated against him because he was a male. This claim was later amended to assert a retaliation claim. (P. Ex.–32.)

On January 17, 1983, McLeod issued plaintiff an annual performance evaluation noting his unsatisfactory work performance. (D. Ex.–16.) Specific deficiencies noted included failure to abide by established University policies, to notify the Director's office of tardiness and absences, to submit leave slips for absences, and to secure advance approval of extended periods of leave. The evaluation also noted Johnson's failure to use sound judgment in interpersonal relationships, including instances in which he consumed intoxicating beverages while on duty, disruption of the work of other employees, engaging in loud and obscene conversations while on duty, and conduct which demonstrated contempt and disrespect toward his supervisor. On the same day, by a separate memorandum, Ms. McLeod also advised the plaintiff that she was recommending the denial of his regularly scheduled step increase. (D. Ex.–17.) Ms. McLeod testified that she was not aware of plaintiff's December 28, 1982 complaint to the EEOC when she issued this notice.

The testimony presented during the trial established other incidents involving plaintiff's improper conduct and work performance. One involved plaintiff's allowing student workers to close the Blackburn Center before the scheduled closing time and to have a party at which alcoholic beverages were served. Ms. McLeod testified that she was on the University campus at the time and decided to check on the Center. During her unplanned visit, she found the Center closed and observed the students drinking beer. This incident was discussed in a notice of unsatisfactory performance issued to plaintiff. On another occasion, plaintiff allowed a fraternity to serve alcoholic beverages at a party despite a University rule prohibiting serving of alcoholic beverages at student parties at the Blackburn Center.

The final and decisive factor leading to the plaintiff's dismissal was an incident occurring during the May 1983 commencement activities of the University. On May 14, an awards program was scheduled at Blackburn Center by one of the University divisions—the College of Allied Health and Science. Present were graduating students of the college, their families, University personnel, and the general public. More than several hundred persons were attending the program. Mr. Johnson interrupted the ongoing ceremony and removed a microphone and other equipment from the assembly hall stage.[1] From all of the testimony presented, the Court concluded that the plaintiff's intrusion and removal of the microphone was tactless and demonstrated poor exercise of discretion and judgment. The incident was a source of great embarrassment to the University.

As a result, on June 6, 1983, Dean Vincent Johns served plaintiff a letter of dismissal. At the time of this incident Ms. McLeod was off—on extended sick leave. The letter specified failure to exercise sound judgment in interpersonal relationships and discourteous treatment of employees, students, faculty, staff and visitors. Other reasons for the adverse personnel action were also noted including problems with the plaintiff's time and attendance. Plaintiff was afforded a hearing following which the decision to terminate his employment was upheld by the University Personnel Office. Complaints registered by the plaintiff with the D.C. Office of Human Rights, as well as the EEOC, were likewise decided adversely with a finding that there was no probable cause to proceed with the plaintiff's formal grievances.

This Court concludes from all the trial testimony and evidence, that there was solid justification for the action taken by the University. There were legitimate, bona fide and nondiscriminatory reasons for such action. The University attempted to accommodate and work with the plaintiff for three years. At best, the plaintiff was a considerably less than average and a marginal employee in his work performance, attitude toward the public, and relation with his peers and supervisors. In dismissing the plaintiff, he was afforded all procedures and the letter and spirit of the University's personnel policies were complied with. There was no subterfuge or irregularity in the manner in which plaintiff's separation from service was achieved.

Finally, it might be said that from a careful consideration of all the testimony presented by both the plaintiff and the defendant during the several days of trial, that this is a case which had little, if any, merit. It is a wonder to the Court why the case was ever accepted and brought on behalf of the plaintiff.

## CONCLUSIONS OF LAW

Mr. Allen Johnson, a male, claims that he was discharged in retaliation and because he filed official complaints with the Equal Employment Opportunity Commission about the discriminatory treatment accorded by Howard University. There was no proof that he was discriminated against because of his sex. The order and allocation of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), has been applied to retaliation cases. In *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir., 1980), the Second Circuit Court of Appeals announced the order and allocation of proof as follows:

[I]n order to establish such a claim, the plaintiff must show: first, protected participation or opposition under Title VII known by the alleged retaliator; second, an employment action or actions disadvantaging persons engaged in protected activities; and third, a causal connection between the first two elements, that is, a retaliatory motive playing a part in the

1. For some unexplained reason, the University whose operations are funded for the greater part by the federal government was faced with a significant problem on this occasion. It neglected to provide a sufficient number of microphones to service the several programs scheduled at the Center on this particular evening.

adverse employment action.... [T]he plaintiff must first establish a prima facie case; the burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for the alleged acts of reprisal; and lastly, the burden returns to the plaintiff, who is given an opportunity to demonstrate that the employer's reasons are a mere pretext or discrimination taken in retaliation for participation in protected activities.

*Accord: Mitchell v. Baldridge,* 759 F.2d 80, 86 (D.C.Cir.1985); *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984); *Williams v. Boorstin,* 663 F.2d 109, 116 (D.C.Cir.1980) *cert. denied,* 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981).

■ Plaintiff filed a complaint with the EEOC and was discharged from the University several months later. Because his termination followed the filing of the discrimination complaint, he argues that it must have been prompted by his complaint. This reasoning, however, fails to satisfy the applicable legal standard. Johnson has failed to demonstrate the requisite "causal connection" between his discharge and the filing of his EEOC complaint. *Grant v. Bethlehem Steel,* 622 F.2d 43. Thus, he has failed to prove his case.

■ The substantial and credible testimony and evidence established that plaintiff had a continual stormy relationship with his associates and supervisors. The series of formal notices of unsatisfactory performances were clearly warranted. In general, the notices cited plaintiff for essentially the same deficiencies: discourteousness, insubordination, and failure to comply with rules and requirements and conditions of employment. As to his superiors, on frequent occasions, Mr. Johnson was contentious and hostile. He rebuked and challenged their authority in addition to being insolent; he ignored reasonable requirements observed by other employees. On occasions he failed to use tact and diplomacy and was insensitive to the role that a University employee should play in his relationships with University guests and the public at large.

Most of the notices of unsatisfactory performance predated plaintiff's EEOC complaint. The pattern of poor performance which plaintiff established in 1981 continued and ultimately resulted in his termination. Moreover, he was afforded every opportunity to improve his performance.

■ Evidence of unsatisfactory work performance prior to the filing of a complaint of discrimination is relevant, admissible, and provides persuasive support for a determination that the adverse personnel action was not based on retaliatory motives. *Johnson v. Lybecker,* 15 FEP 300, 306 (D.Ore.1977); *Bradington v. IBM Corp.,* 360 F.Supp. 845, 855 (D.C.Md.1973), *aff'd mem,* 492 F.2d 1240 (4th Cir.1974).

An appropriate order of dismissal will be entered.

### ORDER OF DISMISSAL

Pursuant to the Memorandum Opinion issued herewith, it is this 2nd day of July, 1986,

### ORDERED

That judgment is entered for the defendant; and

That this case is dismissed with prejudice.